UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRISTOUT BOURGUIGNON | : | PRISONER<br>CIVIL NO. 3:01CV1345 (JBA)(JGM) |
| v. | : | |
| MARSHAL RAY | : | OCTOBER 14, 2005 |

**MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. Raymond J. Dillon, Jr. is employed by the State of Connecticut as a Judicial Marshal.

2. On February 14, 2001, Marshal Dillon was assigned as a Judicial Marshal in the cellblock of the Judicial District #2 Courthouse, in Bridgeport, Connecticut. (Affidavit of Dillon)

3. On February 14, 2001, the plaintiff, Bristout Bourguignon, was an inmate being held in the number 1 cell of the cellblock. (Id.)

4. At approximately 12:50pm, Marshal Dillon opened the door of cell #1 to allow another inmate to enter. (Id.)

5. As Marshal Dillon attempted to close the cell door, the plaintiff came up to the front of the cell, apparently attempting to get the attention of an attorney who was in the cellblock area. (Id.)

6. The plaintiff apparently placed his left hand between the door and the door jam just as Marshal Dillon closed the door.

7. As soon as Marshal Dillon realized the plaintiff had caught his hand in the door, he opened the door to allow the plaintiff to remove his hand. (Id.)

8.  The above incident was caused by the plaintiff placing his hand between the door and the door jam without Marshal Dillon's knowledge. (Id.)

9.  The plaintiff had a slight cut to his left hand and was given a BandAid and a towel-wipe. (Id.)

10. Marshal Dillon asked the plaintiff if he needed further medical attention and he said no. (Id.)

11. Later, the plaintiff asked Judicial Marshal Camarro if he could go to the hospital. (Id.)

12. Arrangements were made to take the plaintiff to Bridgeport Hospital through the supervisor, Richard Grazcyk. (Id.)

13. Marshal Dillon was one of the transporting officers, along with Judicial Marshal Rossi. (Id.)

14. At no time did the plaintiff complain to any other officer or supervisor that Marshal Dillon had intentionally slammed the door on his hand or had made any racial comments. (Id.)

15. At the hospital, x-rays were taken of the plaintiff's hand, he was given ibuprofen and some ice. (Id.)

16. The x-rays were negative. (Id.)

17. The plaintiff was transported back to the lock-up. (Id.)

18. At no time did Marshal Dillon make any racial comments about the plaintiff. (Id.)

19. Appropriate medical care was provided to the plaintiff in a reasonable manner. (Id.)

20. Plaintiff was being held as a pretrial detainee on February 14, 2001. Exhibit A.

21. Richard Camarro is employed by the State of Connecticut as a Judicial Marshal. (Affidavit of Camarro)

22. On February 14, 2001, Richard Camarro was assigned to the cellblock in Superior Court, J.D. #2 in Bridgeport, Connecticut. (Id.)

23. At about 12:50pm, Richard Camarro observed Judicial Marshal Dillon closing a cell door and inmate Bourguignon being at the front of the cell. (Id.)

24. Richard Camarro observed the cell door being closed normally. (Id.)

25. Richard Camarro did not observe the door being slammed shut. (Id.)

26. Part of the duties of Richard Camarro involved observing the opening and closing of cell doors by other Judicial Marshals. (Id.)

27. Richard Camarro became aware that Mr. Bourguignon claimed his thumb had been caught in the door and assisted Judicial Marshal Dillon by handing him some paper towels and a Band-Aid. (Id.)

28. At the time of the incident, Richard Camarro was approximately ten feet from the cell door and Judicial Marshal Dillon. (Id.)

29. Mr. Bourguignon requested medical attention and Richard Camarro contacted Richard Graczyk and informed him of this request. (Id.)

30. At no time did Richard Camarro hear Mr. Dillon state any derogatory comments toward Mr. Bourguignon.

31. Richard Camarro has never heard Mr. Dillon use the words "black mother fucker" or "nigger".

32. At no time did Mr. Bourguignon complain to Richard Camarro about Mr. Dillon. (Id.)

33. Richard Camarro was present when Richard Graczyk asked the plaintiff if he had any problem with Mr. Dillon transporting him to the hospital, to which the plaintiff responded "No, I have no problem." (Id.)

34. Richard Graczyk is employed by the State of Connecticut as a Judicial Marshal. (Affidavit of Graczyk)

35. On February 14, 2001, Richard Graczyk was Acting Supervising Judicial Marshal for the Superior Court, J.D. #2 in Bridgeport, Connecticut. (Id.)

36. On February 14, 2001, Richard Graczyk was informed by Judicial Marshal Ray Dillon that an incident had occurred involving Mr. Bourguignon. (Id.)

37. Richard Graczyk instructed Judicial Marshal Dillon to write a report regarding the incident with the plaintiff. (Id.)

38. Richard Graczyk spoke with Mr. Bourguignon. (Id.)

39. Richard Graczyk made a decision to send Mr. Bourguignon to Bridgeport Hospital. (Id.)

40. As an inmate, Mr. Bourguignon had to be escorted to the hospital by Judicial Marshals. (Id.)

41. Richard Graczyk did not intend to send Judicial Marshal Ray Dillon with Mr. Bourguignon because he had concerns that Mr. Bourguignon might harbor ill feelings towards Mr. Dillon as a result of the incident. (Id.)

42. The plaintiff interrupted Mr. Graczyk's discussion with the Judicial Marshals who were present in the cellblock, stating that he had no problem with Mr. Dillon escorting him and he knew what happened was just an accident. (Id.)

43. Mr. Bourguignon informed Mr. Graczyk he had no ill feelings towards Mr. Dillon. (Id.)

44. Mr. Bourguignon did not express anything negative about Mr. Dillon and did not make any complaints to Mr. Graczyk concerning Mr. Dillon's conduct. (Id.)

45. Mr. Bourguignon did not complain to Mr. Graczyk about any derogatory comments or remarks made by any Judicial Marshal concerning him or his race, either before his transport to the hospital or after his return. (Id.)

46. Mr. Bourguignon never informed Mr. Graczyk that he had been called a "black mother fucker" or "nigger" by Mr. Dillon. (Id.)

47. Mr. Graczyk was not made aware of any other problems concerning Mr. Bourguignon for the rest of that day. (Id.)

48. On February 14, 2001, Joseph Rossi, Jr. was employed by the State of Connecticut as a Judicial Marshal. (Affidavit of Rossi)

49. On the above date, Mr. Rossi was assigned to the Superior Court, J.D. #2 in Bridgeport, Connecticut. (Id.)

50. During that day, Mr. Rossi was ordered by Mr. Graczyk to escort inmate Bristout Bourguignon to the Bridgeport Hospital with Judicial Marshal Ray Dillon. (Id.)

51. Mr. Rossi was informed by Mr. Dillon that Mr. Bourguignon's thumb had been injured. (Id.)

52. At the hospital, Mr. Bourguignon was examined and an x-ray was taken. (Id.)

53. After being treated and the x-ray taken, Mr. Rossi and Mr. Dillon transported Mr. Bourguignon back to the lock-up. (Id.)

54. Mr. Rossi was with Bristout Bourguignon and Ray Dillon the entire time from the lock-up to the hospital and back to the J.D. (Id.)

55. At no time did Mr. Rossi hear any derogatory comments made by anyone, including Ray Dillon, toward Mr. Bourguignon. (Id.)

56. At no time did Mr. Rossi hear any racial comments of any kind, including the words "nigger" or "black mother fucker". (Id.)

57. Mr. Bourguignon was quite friendly toward Mr. Dillon and engaged in small talk while Mr. Rossi and Mr. Dillon escorted and transported him. (Id.)

58. Mr. Rossi observed no animosity between Mr. Dillon and Mr. Bourguignon at any time. (Id.)

        DEFENDANT
        Marshal Ray

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL

BY:_____
    Michael J. Lanoue
    Assistant Attorney General
    110 Sherman Street
    Hartford, CT  06105
    Federal Bar #ct05195
    E-Mail:  michael.lanoue@po.state.ct.us
    Tel: (860) 808-5450
    Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 14th day of October 2005:

Bristout Bourguignon #265860
MacDougall/Walker Correctional Institution
1153 East Street South
Suffield, CT 06078

_____
Michael J. Lanoue
Assistant Attorney General