

DEC 7 2005

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 DEC 22 P 12: 40

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

BRISTOUT BOURGUIGNON  :
                     :         PRISONER
    v.               :Case No.3:01cv1345(JBA)(JGM)
                     :
Sheriff RAY, et al   :     November 28, 2005

Brief in Opposition to Defendant's
Summary Judgment Motion

**Statement of the Case**

This is a § 1983 action, filed by a prisoner at McDougall Correctional Facility seeking damages, a declaratory judgement, and injunctive relief of excessive force and liability of the defendant Raymond Dillon for damdages, defendant had filed a motion for summmary judgment as to the plaintiff's use of force and liability of the defendant Marshall Raymond Dillon for damages. Defendant arguing that his conduct did not violate the constitution.

**Statement of Facts**

The plaintiff's declarations submitted in response to the defendant motion states that on February 14, 2001, the plaintiff got assaulted by Marshall Raymond Dillon who intentionally, recklessly locked and slammed a steel cell door shut on the his left thumb without warning him or take safety and security measures to ensure the plaintiff's welfare and his safety.
As a result of the incident the plaintiff suffered injuries and pain to his left thumb and his finger nail was torn off and his left thumb was bleeding.

The defendant's affidavits claim in summary, that the above incident was caused by the plaintiff placing his hands between the door and the door jam without Marshall Raymond Dillon's knowledge.

Argument
POINT 1

There are genuine issues of material fact that preclude summary judgement for the defendant on the plaintiff's use of force claim and liability of Raymond Dillon for damages.

Summary judgement is to be granted only if the record before the court shows that there is no genuine issues as to any material facts and that the moving party is entitled to a judgment as a matter of law." Rule 56(C).Fed.R.Civ.P. A "material" fact is on that" might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 US 242, 248 (1986).

The affidavit of the plaintiff and the defendant are squarely contradictory as to what force was used, the allegations in the plaintiff's affidavit portray a completely needless use of force against an inmate who was locked in a cell and was attempting to cooperate with what ever the order he had been given. There is clearly a genuine issue of fact.
The factual dispute is also material. Under the governing law wheter the use of force by the defendant violates the eight amendment depends on whether it was" applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm" Hudson v. Mcmilliam- us- 112 s. ct 995,998-99 [1992].  Whitley v. Albers,475 u.s. 312, 320-21 ,106 s. ct. 1078 [1986].
The facts alleged by the plaintiff are evidence that the defendant were acting  maliciously and sadistically to cause harm", They would support a jury verdict in the plaintiff's favor. See Miller v. leathers,913 f.2d 1085,1088 [4th cir.1990] [en banc] Retaliatory intent could be inferred from officer's action cert.denied,111 s.ct 1018 [1991]; Oliver v. collins,914 f. 2d 56, 59 [5th cir.1990] Testimony that no force at all was necessary would support a finding of malice. Lewis v. downs, 774 f.2d 771,774.[6th cir. 1985]  [evidence that an officer kicked a handcuff person who was living on the ground showed malicious motivation]

In this case, the "force" applied was closing of a steel cell door on the plaintiff's thumb with out warning him or giving him a direct order to remove himself infront of the steel cell door before he closed it on the plaintiff's hand. The defendant has a fundamental duty to ensure the plaintiff safety and security at all time. It's abvious that the defendant conduct was inappropriate because he failed to obey all laws of federal government and the state of connecticut and he did in fact violate the office of the district marshal code of conduct. The defendant did in fact admit of closing the steel cell door on the plaintiff's thumb in the responses to the plaintiff request for admission dated may 23,2005 and june 13,2005.See a copy of both request for admission in the plaintiff's motion for summary judgment attached as exhibit 7

The defendant claims in his memorandum dated october 14, 2005, that he merely closed the cell door and was unaware that the plaintiff had placed his thumb in the door jam.It's abvious that the defendant did seing the plaintiff was consuting with his attorney infront of the steel cell door but he failed to

warn or give the plaintiff a direct order to remove himself in front of the steel cell door before he shut it on the plaintiff's thumb. The defendant has an obligation and a fundamental duty to perform and make sure that all the inmates are under his supervision are safe and sound according to his memorandum of policy #3-89. See a copy of that memorandum attached as exhibit A. The defendant Marshall Raymond Dill n did in fact use racial words towards the plaintiff while he was in the transportation van going to the hospital as well as in the court house lock up in front of those inmates that witnessed the entire incident, that's the reason why the plaintiff could not get any statement from those inmates that were present during incident because the defendant did not want to produce the names of all inmates that were present during incident in my request for production of document. The defendant responsed to the plaintiff's request stated that no list of inmates exist. Please see both request for production of document dated May 23,2005 and July 1,2005 as Exhibit B.

The defendant mentioned that in his memorandum that the plaintiff does not offer and affidavit or a statement from his attorney DeMirjan. Despite this, the plaintiff was having problem with his attorney. His attorney DeMirjan was ineffective during the plaintiff's trial case, as a matter of fact the plaintiff has a case pending against Mr. DeMirjan in the Habeas Corpus Court. It would be biased for the plaintiff to ask Mr. DeMirjan to sign a sworn affidavit supporting his claim in this civil matter. The plaintiff received a formal hearing by the claim of the commissioner in December 10,2002 at Manson Youth Institution. The hearing was based on liability. The plaintiff request the claim commissioner to call the prisoners that were present during incident but the claim commissioner refused to call any of the witnesses that were present during incident, instead the claim commissioner stated that he believed that Marshal Richard Camarro's version of the event was the same as the defendant Raymond Dillin. So therefore the commissioner said he doesn't need the plaintiff's testimony and evidence and witnesses. The claim commissioner denied the plaintiff liability as to his injurys. See a copy of the claim comissioner Mr. James R. Smith decision attached in the plaintiffs motion for summary judgement dated August 22, 2005 as Exhibit 3.

Consistently with the claims commissioner procedure and policy. The plaintiff filed an appeal with Chief Clerk Nancy Maegmins complaining that the claims commissioner failed to subpeona the plaintiff's witnesses and that his due process rights were violated and the claims commissioner James R. Smith did not give the plaintiff the opportunity to present evidence at the hearing. The plaintiff's appeal was denied on 1-6-03. See a copy of the appeal attached in the plaintiff's Motion for Summary Judgment dated August 22, 2005, as Exhibit 4.

The defendant claims that the plaintiff gave no evidence that the defendant knowingly and intentionally slammed the door on his hand. Well, it's obvious that the defendant knowingly had knowledge of the plaintiff's presence standing in front of him. He had full control of the door in his hand manually but disregarded it by not warning the plaintiff. He also knowingly, intentionally and recklessly slammed the steel cell door on the plaintiff's hand. Based on the defendant's malice intentions and reckless disregard a reasonable jury could conclude that the defendant closed the cell door on the plaintiff's thumb maliciously and sadistically to cause the plaintiff harm. There is evidence existing that would show the defendant's conduct was reckless and malice. Judicial Marshal Camarro was not there during the incident, at the time of incident he was in the office doing paperwork. He was also watching J.D. Cell 1 in the cell block video monitor and his back was facing cell 1 block. The only way Marshal Camarro observed the incident was only through the J.D. Cell 1 video monitor. The plaintiff requested that the video tape that was recorded on, 2-14-01, by the Court Marshal's office of J.D. cell 1 be with held for court purposes. The defendant responded stating that no video tape was made. See a copy of the defendant's response to the plaintiff's request for production of documents dated July 1, 2005 as exhibit B.

The defendant slammed the steel cell door on the plaintiff's thumb with such impact and with such force. As a result the plaintiff suffered injurys and nerve damage to his left thumb and his finger nail was torn off and his thumb was bleeding. The injury to the plaintiff's thumb was not accidental, yet more then likely it was done intentionally because the defendant had control of the cell door manually but disregarded.

The plaintiff does not have any power or authority to dictate who wants to escort him to the hospital. As a matter of fact the defendant supervisor did not consult with the plaintiff or ask him if it was alright to have the defendant Marshal Raymond Dillon escort him to the hospital. On route to the hospital and back to the court house the plaintiff was repeatedly abused by the defendant who call him a "nigger" and a "black mother fucker." While the defendant intentionally locked the steel cell door on the plaintiff's hand he stated that "you deserve that nigger for standing in front of the cell door." When the plaintiff got back from the hospital to the court house, he mentioned to the defendant supervisor Richard Grazyk the defendant's racist comments which he did not take any further steps to discipline the defendant's racial behavior. It will be proper, based on the facts presented for a jury to reasonably conclude that the defendant was negligent and reckless and was motivated to intentionally and sadistically harm the plaintiff.

Based on the evidence produced by the plaintiff and the facts of this case. A reasonable jury could find the defendant Raymond Dillon liable and responsible for recklessly, intentionally, maliciously, sadistically caused the plaintiff harm.

Conclusion

Plaintiff's motion for summary judgment should be granted.
Defendant's motion for summary judgment should be denied.

*PLAINTIFF*
*Bristout Bourguignon*
*PRO-SE*

Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 28th day of November 2005:

Michael J. Lanoue
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105

Bristout Bourguignon